UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEM KREST LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) CAUSE NO. 3:21-cv-572 RLM-MGG |
| | ) |
| THE HANOVER INSURANCE COMPANY, | ) |
| | ) |
| *Defendant* | ) |

## OPINION AND ORDER

Kem Krest LLC sued The Hanover Insurance Company for breach of contract and for breach of the covenant of good faith and fair dealing. During discovery, Kem Krest filed a motion to compel, which still pends. [Doc. 30]. Hanover moved for summary judgment on both of Kem Krest claims. [Doc. 42]. The court held oral arguments on Hanover's motion for summary judgment on February 1, 2023. For reasons explained in this opinion and order, the court GRANTS Hanover's motion for summary judgment on both of Kem Krest's claims and DENIES Kem Krest's motion to compel as moot.

### BACKGROUND

The court presents the record in the light most favorable to Kem Krest, the nonmoving party, at summary judgment. Eaton v. J.H. Findorff & Son, Inc., 1 F.4th 508, 511 (7th Cir. 2021).

Kem Krest, a company in Elkhart, Indiana, contracted to purchase 1,150,000 sterile medical gloves from a Malaysian seller, KH Eco Works Sdn Bhd. KH Eco Works contracted with one supplier (Tai Say Group Pte. Ltd.) who contracted with a second supplier (Nakaway Td Pte. Ltd.) to provide gloves.

To effectuate the sale, Kem Krest and KH Eco Works entered into an escrow agreement with RP Trust, Inc.; RP Trust, as escrow agent, would receive Kem Krest's full payment to KH Eco Works and would distribute the funds according to Kem Krest and KH Eco Works's contract. First, RP Trust would disburse a down payment upon receipt of a bank guarantee from one of the subcontractors. Second, KH Eco Works would inspect the gloves (Kem Krest could watch by video stream or could send a representative to attend), at which point RP Trust would make a second payment to the suppliers and a third payment to cover transportation and logistics expenses. RP Trust would release the penultimate portion of payment when the shipping company received the gloves and the final portion when Kem Krest received the gloves.

Kem Krest wired the entire purchase amount to RP Trust on November 6, 2020. When the subcontractors were supposed to send a bank guarantee, they offered RP Trust a letter of credit instead and promised that a bank guarantee was forthcoming. Although the contract conditioned the first payment on receipt of a bank guarantee, RP Trust sent the subcontractors the first down payment. Then, one of the subcontractors told RP Trust that it needed escrow funds to ensure the gloves could be shipped given limited air and freight availability at the time. RP Trust sent another payment in response. The freight company sent

2

trucks to the factory but was told no payments had been made, no gloves were allocated to Kem Krest, and none would be given.

Kem Krest transferred more than $3.2 million dollars for the gloves. The supplier never delivered the gloves. Kem Krest recovered about half a million dollars, reducing its loss to $2,710.357, and submitted a claim to its insurer, The Hanover Insurance Company. Hanover denied the claim, explaining that the loss fell outside the contract's Transit Coverage and that the Exchanges or Purchases Exclusion and the Voluntary Parting Exclusion would also exclude the claim. Kem Krest sued Hanover in state court and Hanover removed to federal court. Hanover moves for summary judgment on Kem Krest's claims.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A court accepts the non-movant's evidence as true and draw all inferences in his favor. Id. at 255. Nevertheless, the nonmoving party isn't entitled to "[i]nferences that are supported by only speculation or conjecture." Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v.

Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

DISCUSSION

Hanover moves for summary judgment on both of Kem Krest's claims.

*Breach of Contract*

Kem Krest alleges that Hanover violated their insurance policy by denying coverage for the loss Kem Krest incurred while trying to purchase nitrile gloves. Neither party disputes three of four elements of a breach-of-contract claim: a valid contract, performance by the complaining party, and damages arising from the defendant's alleged breach. *See* U.S. Research Consultants, Inc. v. Cnty. of Lake, 89 N.E.3d 1076, 7086 (Ind. Ct. App. 2017). The parties dispute the third element: whether Hanover didn't perform its half of the bargain when it didn't provide coverage. *See* id.

Hanover argues that it's entitled to summary judgment because the Transit Coverage provision doesn't cover Kem Krest's loss. The Transit provision provides that Hanover will cover Kem Krest's loss if it results from "**Robbery** or **Theft** of **Money** and **Securities** committed by a **Third Party**, or destruction or disappearance of **Money** and **Securities**, while **In Transit** and including while temporarily within the living quarters of a **Messenger**." [Doc. 44-1 at 112]

4

(emphasis in original, indicating defined terms). The contract defines "In Transit" as "being conveyed by the **Insured** outside the **Premises**, from one place to another and in the custody of a **Messenger**, an armored motor vehicle carrier, or another person authorized by the **Insured** to have custody of **Money**, **Securities** or **Other Property**. [Doc. 44-1 at 116] (emphasis in original, indicating defined terms). The contract further defines "Premises" as "the interior of that portion of any building the **Insured** occupies in conducting business." [Doc. 44-1 at 117] (emphasis in original, indicating defined term).

Interpreting an insurance contract is a question of law, subject to the same rules of construction as other contracts in Indiana. Masten v. AMCO Ins. Co., 953 N.E.2d 566, 569 (Ind. Ct. App. 2011). A court looks for the parties' intent and construes the policy as a whole, "consider[ing] all the provisions of the contract and not just the individual words, phrases, or paragraphs." Id. (citing Buckeye State Mut. Ins. Co. v. Carfield, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). Clear and unambiguous language is given its plain and ordinary meaning. Burkett v. Am. Fam. Ins. Grp., 737 N.E.2d 447, 452 (Ind. Ct. App. 2000). Ambiguous language is generally construed against the insurer, although "an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language." Id. (citing Town of Orland v. Nat'l Fire & Cas. Co., 726 N.E.2d 364, 370 (Ind. Ct. App. 2000)).

Hanover reads the Transit provision as covering the loss of physical property but not of money that is transferred by electronic means. Hanover argues that by referring to a messenger's living quarters, a physical location, the

5

policy terms demonstrate that a transfer must be a physical transfer. Relatedly, the definition of premises refers to the outside of a physical building. Hanover argues that electronic funds don't physically exist inside or outside a physical building, so they can't move outside of a building. Hanover then elaborates on this point, arguing that "outside the **Premises**" only covers property moved from a location inside a Kem Krest building to a location outside a Kem Krest building. Its reading would not include property, like an electronic money transfer, that moves between two locations that are both outside of Kem Krest's building. Hanover cites a case applying Indiana law to support this point. *See* Brightpoint, Inc. v. Zurich Am. Ins. Co., 1:04-CV-2085, 2006 U.S. Dist. LEXIS 26018, at *17–19 (S.D. Ind. March 10, 2006).

Hanover relies on other caselaw to assert that courts uniformly limit similar Transit Coverage provisions to physical property. For instance, one court interpreted a similar provision as covering "losses due to [the plaintiff's] property being physically lost, stolen or destroyed while in transit." Flushing Sav. Bank v. Hartford Fire Ins. Co., 650 N.Y.S.2d 727, 728 (N.Y. App. Div. 1996). But as Kem Krest points out, the cases Hanover cites don't uniformly interpret Transit Coverage provisions as covering *only* tangible property. For instance, one court explained that an armored car company's theft of a bank's cash would be covered except that the cash wasn't in transit when stolen. Palm Desert Nat'l Bank v. Fed. Ins. Co., 473 F. Supp. 2d 1044 (C.D. Cal. 2007). Another court addressed an armored car company's theft of money but considered whether the insurance contract required the insured to exhaust claims against third parties before

6

bringing a claim against the insurer. Certain Underwriters at Lloyd's of London v. Cardtronics, Inc., 438 S.W.3d 770 (Tex. App. 2014). A third addressed whether casino chips that were given to a messenger were in the messenger's custody (and so "in transit") when the messenger left the casino chips unattended in a parked car. Home Indem. Co. v. Desert Palace, 468 P.2d 19 (Nev. 1970). And a fourth court addressed whether property was considered in transit during interruptions to its travel from one place to another. CashZone Check Cashing Corp. v. Vigilant Ins. Co., 981 N.Y.S.2d 698 (N.Y. App. Div. 2014). Each of these cases supports the proposition that transit coverage provisions cover physical property. These courts neither confronted whether transit coverage provisions cover intangible property nor delineated the outer bounds of the types of property covered. They don't support Hanover's assertion that courts uniformly limit Transit Coverage provisions to physical property.

Kem Krest contends that the plain language doesn't require that money be physical money. First, Kem Krest says that reference to an armored motor vehicle carrier and a messenger's living quarters merely illustrate some covered circumstances; they don't limit covered circumstances to those circumstances or similar circumstances. Next, Kem Krest points to a separate provision, the Funds Transfer Fraud Coverage provision. The Funds Transfer Fraud Coverage and the Transfer Coverage provisions both incorporate the same definition of money: "Currency, coins and bank notes in current use and having a face value; and Travelers checks, register checks and money orders held for sale to the public." [Doc. 44-1 at 117]. Unlike the Transfer Coverage, the Funds Transfer

7

Fraud Coverage covers money that's paid from a "transfer account." Transfer accounts include accounts from which money can be transferred "[b]y means of electronic, telegraphic, cable, [etc.] instructions communicated directly through an electronic funds transfer system." [Doc. 44-1 at 118]. Kem Krest proposes that if the Funds Transfer Fraud Coverage provision allows for electronic transfer of money and uses the same definition of money as the Transit Coverage provision, then the Transit Coverage must also allow for electronic transfers.

Kem Krest disputes Hanover's assertion that "outside the premises" requires that property originate within Kem Krest's buildings. Kem Krest argues that the plain meaning of "outside" simply means "not inside"; it doesn't mean "moving from the interior to the exterior." Kem Krest proposes that referring to the outside of its premises functions to exclude property that moves exclusively within Kem Krest's premises, like a check that a Kem Krest employee carries down the hall to another employee.

Kem Krest's interpretation is the better of the two on this point. To start, "outside the premises" doesn't ordinarily mean moving from inside to the outside. When carolers sing "Oh the weather outside is frightful," they certainly don't mean the weather that originated in their house and moved outside. Or someone "standing outside the theater" might have just arrived to enter the theater, just exited the theater, or might simply be passing the theater and stopped to tie his shoe. Without more specific context, the phrase "outside the premises" or "outside the interior of any building the Insured occupies in conducting business" doesn't imply an origin within a building. Hanover's authority proves

8

the point. The coverage provision referred to "a transfer of that property from inside . . . the premises." Brightpoint, Inc. v. Zurich Am. Ins. Co., 1:04-CV-2085, 2006 U.S. Dist. LEXIS 26018, at *17–19 (S.D. Ind. March 10, 2006). Although "outside" doesn't ordinarily imply "originating inside," the prepositional phrase "from inside" added that required directional element that Hanover and Kem Krest's contract lacks.

Hanover's interpretation is nevertheless the reasonable interpretation, even without construing "outside the premises" as Hanover proposes. The contract's definition of money only suggests that it covers physical money. Money is "[c]urrency, coins and bank notes in current use and having a face value" and "[t]ravelers checks, register checks and money orders held for sale to the public." [Doc. 44-1 at 117]. An electronic money transfer isn't currency, coin, or a bank note in current use with a face value, nor is it a travelers check, register check, or money order held for sale to the public. Each of those things is tangible. Transit Coverage also includes "other property," but that's explicitly defined as tangible property.

Kem Krest's argument as to the Funds Transfer Fraud Coverage doesn't overcome the Transit Coverage's plain reading, limited to physical transfers. The Fund Transfer Fraud Coverage is more specific as to electronic transfers but indicates nothing more than the scope of that coverage provision. References to electronic transfers expand the scope of money in that provision, not throughout the contract. Had the parties intended for Transit Coverage to have the more expansive definition of money, it would have been more logical to define money

9

as including electronic transfers instead of omitting any such reference in the definition of money and backchanneling that definition through a separate provision. On the contrary, referring to electronic transfers in the Funds Transfer Fraud Coverage provision but not in the Transfer Coverage provision suggests they ought to be excluded from the latter.

Finally, Kem Krest argued at oral argument that the Transit Coverage must be read to include electronic transfers because the reality of modern business is that it and its peer businesses conduct business with electronic money orders rather than with gold bullion or other physical money. Kem Krest would have no use for a provision that covered physical transfers, so it obviously didn't intend for a contract that covered physical property instead of electronic transfers.

This line of reasoning doesn't stand up in the broader context of the contract. Transit Coverage refers to the messenger's living quarters and armored motor vehicle carriers. Including a provision that refers to such physical things makes little sense for parties who don't need or want coverage for transfers of physical money. The court can't conclude that the provision is only useful if made to apply to electronic transfers when the language the parties agreed to clearly covers physical transfers of property.

The Transit Coverage provision doesn't cover Kem Krest's loss and Kem Krest points to no other provision that would provide coverage, so Hanover is entitled to summary judgment on the breach-of-contract claim. The scope of the Voluntary Parting Exclusion and Purchases and Exchanges Exclusion is unnecessary to resolve, so the court doesn't reach those provisions.

*Breach of the Covenant of Good Faith and Fair Dealing*

Kem Krest's second claim is for a breach of the covenant of good faith and fair dealing. A breach of the covenant of good faith in the context of insurance requires that the insurer denied a claim knowing there was no rational, principled basis to do so. Thorne v. Member Select Inc. Co., 899 F. Supp. 2d 820, 826 (N.D. Ind. 2012). A mere dispute, erroneous denial, failure to investigate a claim, or breach without bad faith isn't enough — the insured must show the insurer had a state of mind of "conscious wrongdoing." Id. "Bad faith does not exist when an insurer rests its coverage decision upon a rational basis." Id. (citing Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co., 779 N.E.2d 21, 29–30 (Ind. Ct. App. 2002)).

Hanover argues it's entitled to summary judgment on this claim because its denial of coverage was based on a proper reading of the insurance contract and there's no evidence that it otherwise acted in bad faith.

Kem Krest responds by explaining that it intends to prove that Hanover interpreted its policy preposterously and inconsistently with how it ordinarily interprets its own contracts. Kem Krest says this "intentional manipulation" amounts to conscious wrongdoing and bad faith. Today's record contains no evidence of manipulation, but Kem Krest intends to procure that evidence with its motion to compel. The motion to compel seeks disclosure of policies and procedures relating to Transit Coverage, Hanover's policies more generally, and all documents relating to underwriting the policy, as well as a corporate

11

representative's deposition on topics relating to developing and changing Hanover's insurance policies. Hanover objected to the discovery requests as overly broad, burdensome, and irrelevant.

Hanover replies that Kem Krest can't evade summary judgment by pointing to the motion to compel because Kem Krest hasn't complied with Federal Rule of Civil Procedure 56. A court may defer considering or deny a motion for summary judgment or allow more time for discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Kem Krest says its motion to compel might yield evidence of bad faith but doesn't do so by affidavit or declaration. Adherence to the rules would require denying summary judgment and Kem Krest never cited any law allowing noncompliance with Federal Rule of Civil Procedure 56(d).

The court's interpretation of the insurance contract is essentially the same as Hanover's, and each interpretation led to the same conclusion — Transit Coverage doesn't apply to Kem Krest's loss. Hanover's reading of the contract was reasonable and can't be seen as lacking a rational basis or as an act of intentional wrongdoing. There is, therefore, no genuine issue of fact as to Kem Krest's bad faith claim, and Hanover is entitled to summary judgment on the claim. To the extent Kem Krest might be able to muster some evidence showing bad faith despite Hanover's interpretation being substantially the same as the court's, Kem Krest didn't present that evidence at summary judgment or follow proper procedure to preserve the issue.

Kem Krest's motion to compel sought discovery relevant to the alleged breach of the covenant of good faith and fair dealing. Hanover's entitlement to summary judgment on the claim moots the motion to compel, so the court denies Kem Krest's motion to compel.

CONCLUSION

For the foregoing reasons, the court GRANTS The Hanover Insurance Company's motion for summary judgment [Doc. 42] on both of Kem Krest's claims and DENIES AS MOOT Kem Krest's motion to compel. [Doc. 30]. The court DIRECTS the clerk to enter judgment accordingly.

SO ORDERED.

ENTERED:   February 6, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court